## HAYS v. TACOMA RY. & POWER CO.

(Circuit Court, D. Washington, W. D.    September 14, 1900.)

1. STREET RAILWAY—COLLISION WITH TEAM.
   Where plaintiff was driving a team of horses with a covered wagon in a city, and crossed an electric railway track, and looked up the street, of which he had an uninterrupted view for about 1,400 feet, and saw no car, and, after proceeding a distance of 400 feet, turned on the track to drive into a livery stable, and was struck by an electric car running 24 miles an hour in violation of the city ordinance, he could recover, though he failed to look before so crossing the track; it being in evidence that, if the car had been running at the rate of speed required by the ordinance, there would have been no collision.

2. WITNESS—IMPEACHMENT.
   Where plaintiff called a witness to prove the rate of speed at which a street car was running prior to a collision, and he testified that it was going 12 miles an hour, plaintiff's counsel, upon plea that he had been taken by surprise, could show that before going upon the stand the witness had stated that the car was going at a speed of 20 miles an hour.

Govnor Teats, for plaintiff.
Crowley & Grosscup and Fogg & Fogg, for defendant.

GILBERT, Circuit Judge. The defendant moves for a new trial in a case in which the plaintiff obtained a verdict of the jury for damages for injuries alleged to have been sustained by reason of the defendant's negligence. The plaintiff was driving a team of horses with a covered wagon, going southerly, on C street, in the city of Tacoma, on which street was a single track for electric cars, which ran in the direction in which the plaintiff was going. His horses were unaccustomed to the street cars, and he wished to avoid meeting them. He stopped his team at the southwest corner of C and Thirteenth streets, and shortly afterwards proceeded on his way, intending to cross the street-railway track half a block further on, and enter a livery stable on the other side of the street. Before proceeding he turned and looked up the street, of which he had an uninterrupted view for about 1,400 feet, to see if an electric car was approaching from behind. His testimony was that no car was in sight, and that he thereupon started his team in the direction in which he was going, and proceeded southward a distance of 400 feet, or a little past the middle of the block, when, without again looking back to see if a car was then approaching, he turned abruptly to the left, to cross the railroad track and drive into a livery stable. While crossing the track he was struck by an electric car of the defendant, causing personal injuries to himself, breaking his wagon, and carrying it on ahead of the car a distance of 150 feet. An ordinance of the city of Tacoma prohibited the car from going at a higher rate of speed than 12 miles an hour. There was evidence

tending to show that the car was going at double that rate of speed, and that if its speed had conformed to the ordinance no collision could have occurred. The defendant moved to instruct the jury to return a verdict for the defendant on the ground that the plaintiff's contributory negligence was such as to preclude his right to recover damages. It was argued, and it is now urged as ground for a new trial, that the plaintiff was negligent in not looking for an approaching car immediately before crossing the railway track, and that he had not the right to rely upon the fact that no car was in sight at the time when he looked, when he was at a point 400 feet above the point of crossing, or to rely upon the assumption that the defendant in managing its cars would comply with the requirements of the city ordinance, or would run its cars at no greater speed than the ordinance permitted, and that he was bound to reckon with the danger that cars might run at a higher rate of speed. In short, the defendant asserts the hard and fast rule that one crossing such a street-car track must under all circumstances look at the immediate time of crossing, and that if he fails to do so he assumes all the risk of collision in crossing, no matter what may be the negligence of the street-railway company. Certain of the authorities, it is true, sustain this position. Others, and, it seems to me with the better reason, incline to the view that the rule of looking immediately before crossing is not a fixed one, but that if one looks at such a time prior to crossing, and takes such observations as will justify him in assuming that no collision can occur provided the cars are running at a lawful rate of speed, he is not necessarily guilty of contributory negligence if he fails to take further precaution, or if he proceeds on his way relying upon the presumption that the street-car company will comply with the law. O'Neil v. Railroad Co., 129 N. Y. 125, 29 N. E. 84; Cooke v. Traction Co. (Md.) 31 Atl. 327; Benjamin v. Railway Co. (Mass.) 35 N. E. 95; Driscoll v. Railway Co. (Mass.) 34 N. E. 171; Railway Co. v. Albright (Ind. App.) 42 N. E. 238; Robbins v. Railway Co. (Mass.) 42 N. E. 334; Schilling v. Railway Co. (Sup.) 62 N. Y. Supp. 403; Shea v. Railway Co. (Minn.) 52 N. W. 902; Railway Co. v. Duvall (Neb.) 58 N. W. 531; Hicks v. Railway Co. (Mo. Sup.) 27 S. W. 542, 25 L. R. A. 508; Rapid-Transit Co. v. Seigrist (Tenn. Sup.) 33 S. W. 920; Laufer v. Traction Co. (Conn.) 37 Atl. 379, 37 L. R. A. 533; Railway Co. v. Whitcomb, 14 C. C. A. 183, 66 Fed. 915. In Cooke v. Traction Co., the court of appeals of Maryland said of a case similar to the case at bar:

"There is, to begin with, no possible analogy between a case growing out of an injury caused by a street car to a person rightfully upon the public thoroughfare, and a case involving an injury inflicted by a steam-railroad train on a trespasser wrongfully upon the latter company's right of way. * * * He had a right to drive along the streets, and, after he had looked, and had seen no car approaching on Fayette street, he had the further right to cross the tracks, and to assume that he would not be recklessly run down."

In Robbins v. Railway Co., the supreme judicial court of Massachusetts, by Field, C. J., said:

"The decisions of this court show that a distinction has been taken with respect to the duty to look and listen when crossing the tracks of a steam rail-

road where a railroad train has the exclusive right of way, and when crossing the tracks of a street-railway company in a public street, where the cars have not an exclusive right of way, but are run in the street in common with other vehicles and with travelers. The fact that the power used by the street-railway company is electricity, instead of that of horses, has not been deemed by the court sufficient to make exactly applicable the rule of law which has been laid down concerning the crossing of the tracks of a steam railroad."

In Schilling v. Railway Co., the plaintiff, who was driving his wagon on the street in the direction in which the car was going, had taken the precaution to look out for the approaching car upon entering on the tracks. The court said: .

"It cannot be said, as a matter of law, that he was guilty of contributory negligence in not looking behind him during the time that it would take to drive a single block, or that it was not negligence on the part of the defendant to run him down."

In Shea v. Railway Co., the supreme court of Minnesota said:

"The rule that one approaching a railroad crossing upon a highway must look up and down the track before he attempts to cross is not applicable, as a hard and fast rule, to one who attempts to cross a street-car track upon a public street. The failure to do so is not, as a matter of law, and without regard to circumstances, negligence. Notwithstanding plaintiff's failure to do so as soon as he might have done, the question of contributory negligence was, under the circumstances, one for the jury."

In Railway Co. v. Duvall the supreme court of Nebraska held that the violation of any statutory or valid municipal regulation established for the purpose of protecting persons or property from injury is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence' if the other elements of actionable negligence concur. In Rapid-Transit Co. v. Seigrist the supreme court of Tennessee had under consideration a case in which the plaintiff, with a team at a street crossing, when within 10 yards of the street-railroad track, looked and saw a car coming, seemingly 200 or 250 yards away, and, thinking he had plenty of time to cross the track in front of the car, which was moving fast, immediately drove on at the rate of 4 miles an hour, and did not look at the car again until his front wheels were on the track. The court said:

"Though it was his duty to look and listen as he approached the crossing, it was not incumbent on him to stop before going upon the track, when it seemed to him, upon reasonable ground, that he could pass over in safety. The law does not require so great an amount of carefulness of a person in crossing a street railway as in crossing a steam or commercial railway, for the obvious reason that his right is greater and his danger less in the former than in the latter case."

Of similar import is the decision of the supreme court of Missouri in Hicks v. Railway Co.

In Laufer v. Traction Co., the supreme court of Connecticut, in considering a case in which the driver of a wagon, on the wrong side of the street, on the track of an electric car which was approaching him, who knew that another car was approaching from behind, and that it was so far away that if it went at its ordinary rate of speed he could safely cross to that side of the street, held that he was not negligent in so crossing, and in assuming that the car behind him would not be run at a dangerous rate of speed.

It is contended that the court erred in permitting the plaintiff to impeach one of his own witnesses. The witness was called by the plaintiff to prove the rate of speed at which the car was running just prior to the collision. He testified that it was going at 10 or 12 miles per hour. Plaintiff's counsel, upon plea that he had been taken by surprise and trapped by the witness, was permitted to show that before being called upon the witness stand the witness had stated that the car was going at a speed of 20 miles per hour. It is true that ordinarily in calling a witness to testify in his behalf a party to a suit vouches for his credibility. But in a case like this, where a witness is called to prove one of the material facts in the case, and his testimony is wholly different from what he has stated it would be, and the party calling him is taken by surprise, I think the better rule is that it rests in the sound discretion of the court to permit the impeachment. In Johnson v. Leggett, 28 Kan. 590, 605, Justice Brewer, announcing the rule in such a case, said, "We think that, independent of any special statutory provision, the matter is left largely within the discretion of the trial court." In Swift v. Short, 34 C. C. A. 545, 92 Fed. 567, the circuit court of appeals of the Eighth circuit, by Thayer, Circuit Judge, said, "The better view is that the party so deceived may impeach the witness to the extent of showing that the statements made by him on the witness stand are contrary to those made by him before the trial or before he was sworn." In many of the states and in England the question has been settled by legislative adoption of the rule so announced. Every suggestion of reason and justice favors it. The burden of the defendant's complaint of the ruling of the court in this instance is that the witness had been subpœnaed by the defendant, also, to testify as to the rate of speed of the car, and that by the plaintiff's impeachment he was discredited, and the defendant was deprived of the force that his testimony would otherwise have had. To this it is sufficient to say that if the witness had been called for the defendant he would undoubtedly have been impeached by the plaintiff, as the defendant's witness, in the same manner and with the same effect that he was impeached as the plaintiff's own witness. The ruling of the court is supported by Greenl. Ev. (15th Ed.) §§ 443, 444; Thomp. Trials, § 512; Wright v. Beckett, 1 Moody & R. 414; Syrup Co. v. Carlson, 42 Ill. App. 178; Miller v. Cook, 127 Ind. 339, 27 N. E. 131; Smith v. Briscoe, 65 Md. 561, 5 Atl. 334; Dunn v. Dunnaker, 87 Mo. 600; Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418; Hemingway v. Garth, 51 Ala. 530. The motion for a new trial will be denied.